# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN KEITH MATHISON and RONALD MATHISON,<br><br>Defendants. | No. CR06-4030-MWB<br><br>**ORDER ON PETITION TO REVOKE PRETRIAL RELEASE AND TO MODIFY PRETRIAL DETENTION STATUS** |

_____

This matter is before the court on the Government's petition (Doc. No. 129) to revoke pretrial release as to the defendant Ryan Keith Mathison, and to modify the pretrial detention status of Ronald Mathison to provide for Ronald Mathison's pretrial detention. The court held a hearing on the motion on May 31, 2006. Assistant U.S. Attorney Robert Knief appeared on behalf of the Government. The defendant Ryan Keith Mathison appeared in person with his attorney, Chad Primmer. The defendant Ronald Mathison appeared in person with his attorney, Michael Smart.

The Government offered the testimony of three individuals in support of its petition, to-wit: Task Force Officer Elbert Andress, who has been involved in the investigation of this case; Meggan Kobes, a professed friend of Ronald Mathison, and girlfriend of one Kenny Heibel, a potential witness against Ryan Mathison in this action; and Jason Horn, proprietor of a custom motorcycle shop in Yankton, South Dakota.

Before engaging in a discussion of the evidence adduced at the hearing, the court notes the following regarding the defendants' pretrial detention status. Ryan Mathison was arrested on a criminal complaint on February 22, 2006. On February 24, 2006, a detention hearing was held before Chief Magistrate Judge John A. Jarvey. Judge Jarvey denied the Government's motion for detention, and an Order Setting Conditions of Release

was entered on February 24, 2006 (Doc. No. 20 in Case No. 06mj53). According to the Government, Judge Jarvey relied on the Pretrial Services Report in finding Ryan Mathison did not present a flight risk or a danger to the community, rebutting the statutory presumption found in 18 U.S.C. § 3142(e). Among other things, the Government asserts Judge Jarvey relied on Ryan Mathison's family support and ties to the community in making this determination.

The defendant Ronald Mathison was indicted on May 18, 2006. He was arraigned on May 19, 2006, and the Government did not seek detention. He was released pursuant to an Order Setting Conditions of Release (Doc. No. 110). Upon the Government's petition to modify the conditions of Ronald Mathison's release, Judge Jarvey issued a warrant for Ronald Mathison's arrest. Ronald Mathison was arrested on the warrant, and was seen by the undersigned for an initial appearance on May 30, 2006.

The court may reopen a detention hearing if the court finds new information exists that was not known to the Government at the time of the detention hearing, and further finds the information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). In addition, the court must hold a detention hearing upon the Government's motion in a case that involves a serious risk that the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* The hearing must be held immediately upon the person's first appearance, except that a continuance may be granted for good cause as provided in the statute. *See id.* Ronald Mathison's attorney was not present at his initial appearance. The court scheduled a detention hearing for May 31, 2006, to allow all parties and their counsel and witnesses to be present.

At a detention hearing, whether one that occurs immediately following a defendant's arrest or a reopened hearing to consider new information, the court is charged with determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required, as well as the safety of any other person and the community. *Id.* A defendant may be detained based on a showing of either dangerousness or risk of flight; it is not necessary to show both. *United States v. Apker*, 964 F.2d 742, 743 (8th Cir. 1992); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

The court now turns to consideration of the evidence adduced at the detention hearing to determine, first, whether the evidence was known to the Government at the time Ryan Mathison and Ronald Mathison were placed on pretrial release previously, and if so, then whether the new information has a material bearing on whether appropriate conditions of release exist that will ensure the defendants' appearance as required and the safety of other persons and the community. *See* 18 U.S.C. § 3142(f)(2).

The court makes the following findings of fact from the witnesses' testimony at the hearing. Ryan Mathison ordered a custom-built motorcycle from Jason Horn, proprietor of Stage One Custom Cycles in Yankton, South Dakota. Horn met with Ryan Mathison to discuss the style and features he wanted, and then ordered custom parts to fabricate the motorcycle. Horn was paid approximately $30,000 to build the motorcycle, mostly in cash payments. All monies he received in connection with Ryan Mathison's purchase of the motorcycle were paid by Ryan Mathison. Horn never met or spoke with Ronald Mathison until long after the motorcycle had been finished and delivered to Ryan Mathison. At the time Horn delivered the finished motorcycle to Ryan Mathison, Horn provided Ryan Mathison with three Manufacturer's Statements of Origin (MSOs) for the motorcycle's chassis, engine, and transmission. The MSOs identified the parts, but did not contain Ryan Mathison's name. Horn offered to prepare a receipt to evidence Ryan Mathison's

3

purchase of the motorcycle, but Ryan Mathison stated he did not want a receipt. The motorcycle was titled in the name of Ronald Mathison.

Incident to Ryan Mathison's arrest in this action, the motorcycle was seized by the Drug Enforcement Agency, and a civil forfeiture proceeding was initiated. DEA agents contacted Jason Horn and directed him to advise law enforcement if anyone contacted him regarding the motorcycle. Sometime immediately prior to April 27, 2006, Ronald Mathison, the registered owner of the motorcycle, met with his attorney to discuss the possibility of filing a claim for the motorcycle in the forfeiture proceeding. Ronald Mathison's attorney advised him to see if he could obtain paperwork from Jason Horn regarding the motorcycle's purchase. On or about April 27, 2006, Ronald Mathison called Horn, identified himself as Ronald Mathison, and stated he was coming up to Horn's shop to get paperwork regarding the motorcycle. Horn asked if he knew Ronald Mathison, and Ronald Mathison responded, "You'll know me when you see me."[1] As he had been directed to do, Horn contacted officers to report that Ronald Mathison was coming to his shop to discuss the motorcycle. Officers asked Horn to wear a listening device during his meeting with Ronald Mathison, but Horn declined. Officers set up surveillance of the exterior of Horn's shop.

Horn testified he was very uncomfortable with the entire situation. He had seen news reports of Ryan Mathison's arrest, he had been visited by DEA agents and was asked to call them if anyone contacted him about the motorcycle, and officers had asked him to wear a wire. Thus, he understandably was nervous when Ronald Mathison arrived at his shop later that day. Ronald Mathison arrived at Horn's shop in Yankton, accompanied by another male. Horn described the other male as a large man with tattoos and a full beard. Ronald Mathison asked Horn if he had any paperwork relating to purchase of the

---

[1] The court notes Ryan Mathison and Ronald Mathison are brothers, and they bear a strong familial resemblance to one another.

motorcycle. Ronald Mathison stated he was trying to get the motorcycle back from the DEA. Horn told Ronald Mathison that DEA agents had been to his shop at or about the time of Ryan Mathison's arrest, and had taken any paperwork that might have existed regarding the motorcycle. Ronald Mathison then told Horn something like, "Don't tell them how the bike was paid for." Horn testified he was uncomfortable with Ronald Mathison's request. He also testified he stood behind the counter in his shop, and kept the counter between himself and Ronald and the other man during their entire conversation. However, he further stated Ronald Mathison did nothing to intimidate him, either during the telephone call or during their meeting. Horn has not been contacted by Ronald Mathison again since the April 27, 2006, meeting.

The Government argues Ronald Mathison had no motivation whatsoever to go to Horn's shop beyond intimidating him. The Government asserts Ronald Mathison knew he had not had any dealings with Horn in regard to Ryan Mathison's purchase of the motorcycle, and Ronald Mathison had no legitimate reason for going to Horn's shop. Ronald Mathison was not under indictment, and the Government argues he therefore must have been acting for Ryan Mathison's benefit, with the purpose of intimidating or attempting to intimidate a potential witness. Ronald Mathison argues he only went to the shop at the urging of his attorney, in an attempt to obtain some document that might assist him in filing a claim to obtain return of the motorcycle in the civil forfeiture action.

The court accepts Ronald Mathison's representation regarding his reason for going to Horn's shop. Further, there is no evidence in this record that Ronald Mathison did anything to intimidate or threaten Horn. Although the court is concerned by Ronald Mathison's statement that Horn should not tell officers how the motorcycle was paid for, on this record, it appears the statement could have been made in an offhand manner, with no conscious intent to obstruct or attempt to obstruct justice. The court further finds nothing in Horn's testimony implicates Ryan Mathison in any attempt to obstruct justice

or intimidate a witness, or demonstrates Ryan Mathison violated his conditions of pretrial release.

The testimony of Meggan Kobes is more problematic, especially when considered in light of Agent Andress's testimony. An individual named Kenny Heibel provided a proffer interview to agents in 2001, in which he implicated Ryan Mathison in the sale of methamphetamine. A report was generated as a result of the proffer interview, and a copy of the report has been in the Government's discovery file in this case since shortly after the indictment was filed. Meggan Kobes is Heibel's girlfriend. She also is a friend of Ronald Mathison's.

On May 25, 2006, Agent Andress received a telephone call from Kenny Heibel's father, who stated his son had received information that there was a "hit" out on Kenny's life. Agent Andress talked with Kenny Heibel, who stated his girlfriend, Meggan Kobes, had talked with Ronald Mathison, and Ronald Mathison had advised Meggan to "watch her back," and to stay away from Kenny and his residence because "they were going to bomb his house." Agent Andress then talked personally with Meggan. Meggan told Agent Andress she considered Ronald Mathison to be a good friend and she did not want to provide information against him. However, she had become fearful for Kenny's safety after an incident that occurred sometime around May 25, 2006. Two white males had gone to the residence shared by Kenny and Meggan. The men knocked on the door, but got no response. A neighbor confronted the men and asked who they were looking for. The men responded that they were looking for a female who owed them money.

Meggan told officers she had had several conversations with Ronald Mathison during which he had indicated she should stay away from Kenny because his name was on a "hit list" of about fourteen people who were "snitches," and those people "were going to be taken care of." In a followup conversation, Ronald Mathison told Meggan there was a hit out on Kenny's life. Meggan also told officers that Ronald Mathison had made

statements in the past about having individuals come up from Mexico to kill people, after which the individuals would return to Mexico.

When Meggan Kobes testified at the hearing, she appeared to be very nervous, frightened, and tearful. She stated she was only testifying because she had been served with a subpoena. She stated she had provided information about Ronald Mathison to officers because she did not want her boyfriend Kenny to get hurt. Meggan confirmed she has had one or two conversations with Ronald Mathison that led her to believe Kenny could be hurt, and Ronald Mathison had told her to leave Kenny's house because it was not safe. According to Meggan, Ronald Mathison told her Kenny had "snitched" on someone in his family, and it was not safe for her to be at Kenny's house. Meggan testified that based on her conversations with Ronald Mathison, she feels concern about the safety of herself and Kenny Heibel.

Meggan Kobes denied telling officers that Ronald Mathison had told her about a "hit list" or a "snitch list." She also denied that Ronald Mathison told her he had had individuals come to America from Mexico to kill people, stating instead that she had heard this information from others. She stated Agent Andress was twisting what she had told the officers.

The court credits the testimony of Agent Andress regarding what Megan Kobes told officers on or about May 26, 2006. Kobes was visibly shaken during the hearing, and appeared to be attempting to soften the impact of the information she had provided to law enforcement. In addition, although there was some indication Kobes may be an occasional user of methamphetamine, the court finds she was unimpaired by any substance and was fully lucid at the time of the hearing.

Based on this evidence, the court finds the Government has proven by clear and convincing evidence that a serious risk exists that Ronald Mathison will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or

intimidate, a prospective witness in this case. The court further finds the information recently obtained from Meggan Kobes was unknown to the Government at the time Ronald Mathison was placed on pretrial release, and the information has a material bearing on the detention issues. The court further finds no conditions of release exist that will adequately protect prospective witnesses and the community.

Accordingly, as to Ronald Mathison, the Government's petition to modify condition of pretrial release is **granted**, and the court orders as follows:

1. Ronald Mathison is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Attorney General shall afford Ronald Mathison reasonable opportunity for private consultation with counsel while detained.

3. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Ronald Mathison to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. If a "review" motion for revocation or amendment is filed, pursuant to 28 U.S.C. § 3145(a) or (b), the party requesting a change in the original order *must*:

   (a) Attach a copy of the release/detention order to the appeal;

   (b) **Order a transcript immediately. Any failure to obtain a transcript promptly may result in sanctions to the party seeking review of this order.**

5. There is *no automatic stay* of this Order. Therefore, Ronald Mathison must request such relief from the court.

As to Ryan Mathison, the court finds the Government has failed to prove Ryan Mathison violated the conditions of his pretrial release, or that the new information

presented at the hearing has a material bearing on whether Ryan Mathison now presents a serious risk to obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness in this case. Therefore, the Government's petition to revoke Ryan Mathison's pretrial release is **denied**, and Ryan Mathison will remain on pretrial release. However, the court modifies Ryan Mathison's conditions of release as follows: his monitoring method will be changed to a GPS monitoring device, and Ryan Mathison is prohibited from contacting or attempting to contact, directly or indirectly, any person who is or may become a victim, witness, or potential witness in this action. The U.S. Attorney is directed to provide Ryan Mathison's attorney with a list of the names of persons with whom Ryan Mathison is to have no contact while this action is pending.

**IT IS SO ORDERED.**

**DATED** this 31st day of May, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT